IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN ANTONUCCIO,** : | **CIVIL ACTION** |
|    Plaintiff, | : | |
| | : | |
| v. | : | NO.   24-4730 |
| | : | |
| **TODD SMITH,** *et al.*, | : | |
|    Defendants. | : | |

## MEMORANDUM

**MURPHY, J.**                                                                                           **January 24, 2025**

*Pro se* Plaintiff Brian Antonuccio, a prisoner currently incarcerated at the Bucks County Correctional Facility ("BCCF"), has filed an Amended Complaint asserting civil rights claims.[1] Named as Defendants are Detective Sergeant Todd Smith, Detective Mark Bouldin, Lieutenant Kelly Ruddell (collectively, the "Police Officer Defendants"), the Upper Moreland Police Department, Upper Moreland Township, and Montgomery County. The individual Defendants are sued in their individual and official capacities. For the following reasons, the Court will permit Mr. Antonuccio to proceed on his excessive force claims against Defendants Smith, Bouldin, and Ruddell in their individual capacities only, and will dismiss all remaining claims.

---

[1] The Clerk of Court opened this civil action on August 30, 2024 when a letter (DI 2), a motion for leave to proceed *in forma pauperis* (DI 1), and a motion to appoint counsel (DI 3) were mailed to this Court by Brian Antonuccio. In the motion for counsel, Mr. Antonuccio alleged that he "was violently attacked by multiple police officers" on July 21, 2023. DI 3 at 2. Because it was unclear from the filings whether Mr. Antonuccio sought to bring a civil action, an Order entered on September 10, 2024 directed Mr. Antonuccio to file a proper complaint setting forth his claims and a certified copy of his six-month prisoner account statement. DI 5. On September 13, 2024, the Court received Mr. Antonuccio's Amended Complaint. DI 6. By Order dated December 5, 2024, the Court granted leave to proceed *in forma pauperis* to Mr. Antonuccio, finding that he had substantially complied with the directives of 28 U.S.C. § 1915(a)(2). DI 10.

Mr. Antonuccio will be given the opportunity to proceed on his excessive force claims, or file a second amended complaint.

I.    **FACTUAL ALLEGATIONS**[2]

Mr. Antonuccio alleges that the Police Officer Defendants "violently attacked" him on July 21, 2023, while he was in police custody inside the Upper Moreland Police station on a writ from BCCF.  DI 6 ("Am. Compl.") at 5-6.  Specifically, Mr. Antonuccio avers that following a preliminary hearing, he was transported to the Upper Moreland Police Department instead of being returned to BCCF.  *Id.* at 7.  Although Mr. Antonuccio initially questioned why he was at the police department, he cooperated by getting out of the police vehicle.  *Id.*  When Mr. Antonuccio left the police vehicle, he was in full restraints; he was handcuffed in the front and his arms were secured to his waist by a leather restraint belt.  *Id.*  As he entered the police station, Defendant Bouldin held the back of Mr. Antonuccio's prisoner belt and Defendant Smith was on Mr. Antonuccio's left side.  *Id.*  Mr. Antonuccio stopped walking when Smith told him to "do something" different than what he was told by another officer.  *Id.*

When Mr. Antonuccio stopped walking, Smith and Bouldin began assaulting him by "forcefully pushing, pulling and dragging [him] down a hallway."  *Id.*  Once Mr. Antonuccio was able to gain his balance and stable himself, Defendant Ruddell began kicking his right leg and pinning it against the wall.  *Id.*  At the same time, Smith grabbed Mr. Antonuccio's face and

---

[2] Mr. Antonuccio used the form complaint available to unrepresented litigants to file his claims and included additional handwritten pages.  DI 6.  The Court considers the entire submission to constitute the Amended Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system.  The factual allegations set forth in this Memorandum are taken from the Amended Complaint.  Where the Court quotes from the Amended Complaint, punctuation, spelling, and capitalization errors will be cleaned up.  The Court may also consider matters of public record when conducting a screening under § 1915.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

pulled his beard as hard as he could, while Bouldin pushed Mr. Antonuccio down. *Id.* Mr. Antonuccio heard three loud popping noises as he fell to the ground with both Smith and Bouldin falling on top of him. *Id.* Mr. Antonuccio screamed out in pain and his right leg was bent in an unnatural position when he landed on the ground. *Id.*

Mr. Antonuccio avers that EMS was called, and he was "strapped to a gurney with cuffs and placed in [an] EMS vehicle." *Id.* Mr. Antonuccio alleges that they did not immediately depart for the emergency room, and he was forced to wait until an officer was ready to follow behind in a different police vehicle. *Id.* at 8. He contends that making him wait even though security measures were already in place demonstrated indifference. *Id.*

Mr. Antonuccio contends that "all three cops used excessive force . . . denied protocol and took matters into their own hands" even though he was already physically restrained in cuffs and a leather restraint belt. *Id.* He avers that "even if they considered [him] noncompliant" force should have been their last choice, but instead "they immediately became physical." *Id.*

Mr. Antonuccio also contends that "they charged [him] with a serious crime in order to cover up the abuse and assault," and he considers this to be malicious prosecution. *Id.* He also alleges abuse of process because "they continued to hide evidence in [his] favor from the court" and kept him incarcerated on false charges "for an extreme amount of time." *Id.* Mr. Antonuccio asserts that "Judge Rodgers opened an investigation on the missing evidence" and once the evidence was found, "the serious charges were immediately dropped." *Id.*

As a result of the incident, Mr. Antonuccio allegedly suffered a fracture to his leg, a complete tear to his ACL, and tears in his MCL and meniscus. *Id.* at 6. He was provided with crutches and a leg brace, prescribed physical therapy, and has been told by an orthopedic surgeon that he will require surgery to regain "proper leg movement." *Id.* Mr. Antonuccio alleges

deliberate indifference in violation of the Eighth Amendment, malicious prosecution and abuse of process in violation of the Fourth and Fourteenth Amendments, and excessive force in violation of the Fourteenth Amendment. *Id.* at 4. He seeks a million dollars in monetary damages. *Id.* at 6.

A review of public records reveals that Mr. Antonuccio was charged with retail theft for an offense that occurred on May 19, 2023. *Commonwealth v. Antonuccio*, CP-46-CR-0004092-2023 (C.P. Montg.). The arresting officer is listed as Defendant Smith, and charges were held for court on July 21, 2023. *Id.* Mr. Antonuccio entered a guilty plea on May 14, 2024 and was sentenced to pay the costs of prosecution. *Id.* The state court dockets also indicate that Mr. Antonuccio was charged in two other criminal cases with retail theft and intentional possession of a controlled substance, with offense dates of August 16, 2022 and April 20, 2023. *See Commonwealth v. Antonuccio*, CP-46-CR-0000673-2023 (C.P. Montg.); *Commonwealth v. Antonuccio*, CP-46-CR-0003740-2023 (C.P. Montg.). The arresting officers are listed as Sidney Schwartz and Defendant Bouldin, respectively. *Id.* On May 14, 2024, Mr. Antonuccio pled guilty to one count of intentional possession and one count of retail theft.[3] *Id.* He was sentenced to a maximum of twenty-three months imprisonment and ordered to pay the costs of prosecution. *Id.*

## II. STANDARD OF REVIEW

Since Mr. Antonuccio is proceeding *in forma pauperis* (DI 10), 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim for relief. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed

---

[3] The state court dockets indicate that one count of intentional possession of a controlled substance was dismissed on May 14, 2024. *See Commonwealth v. Antonuccio*, CP-46-CR-0003740-2023 (C.P. Montg.).

by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation, [w]e accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Mr. Antonuccio is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants' . . . ." *Id.* (quoting *Mala*, 704 F.3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).

**III.   DISCUSSION**

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. Section 1983 does not supply substantive rights but serves as a means of vindication for violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). "To state a claim under § 1983, a plaintiff must allege the violation of a right

5

secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### A. Claims Against the Upper Moreland Police Department

Mr. Antonuccio has named the Upper Moreland Police Department as a Defendant in this case.  Following the decision in *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978), courts concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions.  *See, e.g., Johnson v. City of Erie*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993).  Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not.  *Id.*; *Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability" (citing *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 671 n.7 (3d Cir.1988))); *Hadesty v. Rush Twp. Police Dep't*, No. 14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016).  Accordingly, the Court will dismiss all claims asserted against the Upper Moreland Police Department with prejudice because it is not a proper defendant under § 1983.

### B. Official Capacity and *Monell* Claims

In drafting his Complaint, Mr. Antonuccio checked the boxes on the form he used indicating that he seeks to name the Police Officer Defendants in their individual and official capacities. *See* Am. Compl. at 3-4. Official capacity claims are indistinguishable from claims against the municipality that employs them, here Upper Moreland Township. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 690 n.55). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

Nonetheless, a municipality such as Upper Moreland Township is not vicariously liable under § 1983 for the actions of its employees. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (holding that local governments can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts." (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986))). Rather, to plead a basis for municipal liability under § 1983, Mr. Antonuccio must allege that an Upper Moreland Township policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* (quoting *Bielevicz*, 915 F.2d at 850). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiffs'] injury." *Id.* (internal quotations and alterations omitted). In other words, "[c]ustom requires proof of knowledge and acquiescence by [a municipal] decisionmaker." *McTernan*, 564 F.3d at 658; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (to establish municipal liability, the plaintiffs "must show that a policymaker for the Township authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence").

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* "Ordinarily, this requires a plaintiff to identify a pattern of similar constitutional violations by untrained employees that puts municipal decisionmakers on notice that a new program is necessary." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (internal quotations omitted). It appears from the allegations in

8

the Amended Complaint that Mr. Antonuccio does not intend to assert a failure to train theory of municipal liability. Am. Compl. at 8. To the contrary, Mr. Antonuccio alleges that the Police Officer Defendants "denied protocol" and "did not [act] as trained" by taking matters into their own hands when they "immediately became physical" with him. *Id.*

To the extent Mr. Antonuccio seeks damages from Defendants Smith, Bouldin, and Ruddell in their official capacities, or from Upper Moreland Township, he has failed to allege facts that support *Monell* liability. Mr. Antonuccio has not pled a municipal policy or custom of Upper Moreland Township with respect to any of the alleged constitutional violations, that such policy or custom caused the constitutional violation, or municipal failures amounting to deliberate indifference. Moreover, general allegations that simply paraphrase the standard for municipal liability are too vague and undeveloped to support a plausible claim. *See Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases); *see also Iqbal*, 556 U.S. at 680-81 (finding that plaintiff failed to plead sufficient facts to state a claim for purposeful and unlawful discrimination based on harsh conditions of confinement). Accordingly, the official capacity claims the Police Officer Defendants, as well as the claims against Upper Moreland Township, are not plausible and will be dismissed without prejudice.[4]

---

[4] Mr. Antonuccio also names Montgomery County as a Defendant. There are no factual allegations against the county, and it appears that Mr. Antonuccio may have named the county as a defendant only because Upper Moreland Township is in Montgomery County. (Am. Compl. at 5.) There are also no allegations suggesting that Montgomery County is responsible for establishing the policies or customs of Upper Moreland Township or its police department. Nothing in the Amended Complaint alleges that the conduct of which Mr. Antonuccio complains was the result of a county policy or custom. Accordingly, any claims against Montgomery County will be dismissed without prejudice.

C. **Individual Capacity Claims**

1. **Excessive Force**

Mr. Antonuccio alleges that the Police Officer Defendants used excessive force on him while he was in police custody on a writ from BCCF. Am. Compl. at 5-6. Because it appears that Mr. Antonuccio was a pretrial detainee during the relevant event,[5] the Due Process Clause of the Fourteenth Amendment governs his excessive force claims. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." (*Graham v. Connor*, 490 U.S. 386, 395 (1989))). To state a due process violation based on excessive force, a pretrial detainee must allege plausibly that "that the force purposely or knowingly used against him was objectively unreasonable." *Id*. at 396-97. "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. at 397. Whether unreasonable force has been used against a detainee "requires 'careful attention to the facts and circumstances of each particular case.'" *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) (quoting *Graham*, 490 U.S. at 396). Courts should "analyze these circumstances 'from the perspective of a reasonable officer on the scene'" while keeping in mind that decisions about force require the expertise of correctional officers, "'who must have

---

[5] Mr. Antonuccio alleges that he was a pretrial detainee at the time of the incident alleged in his Amended Complaint. Am. Compl. at 5.

substantial discretion to devise reasonable solutions to the problems they face.'" *Id.* at 195 (quoting *Kingsley*, 576 U.S. at 397, 399).

The facts alleged in the Amended Complaint, which the Court must accept as true, indicate that Mr. Antonuccio did not pose an immediate threat to the officers' safety during the July 21, 2023 incident. Mr. Antonuccio asserts that as he walked into the police station, he was cooperative and fully restrained in handcuffs and a leather restraint belt with Smith to his left and Bouldin behind him holding onto the belt around his waist. Am. Compl. at 7-8. When Mr. Antonuccio stopped walking, Smith and Bouldin dragged him down the hallway and Ruddell kicked his right leg out from under him, pinning it against the wall. *Id.* Smith also grabbed Mr. Antonuccio's face and pulled his beard as hard as he could, while Bouldin pushed Mr. Antonuccio down, causing Mr. Antonuccio to sustain several injuries to his right leg. *Id.* As Mr. Antonnucio makes factual allegations that the Police Officer Defendants used an unreasonable amount of force against him while he was cooperative and fully restrained, the excessive force claims against Defendants Smith, Bouldin, and Ruddell in their individual capacities pass statutory screening and will be permitted to proceed.

    **2. Malicious Prosecution**

Construing the Amended Complaint liberally, it appears that Mr. Antonuccio also seeks to present a Fourth Amendment malicious prosecution claim. To state a Fourth Amendment malicious prosecution claim, a plaintiff must plausibly allege that a government official charged him without probable cause, leading to an unreasonable seizure of his person. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 557 (2024) (citing *Thompson v. Clark*, 596 U.S. 36, 43-44 (2022)). A plaintiff asserting a malicious prosecution claim must establish that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the

proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). That a "valid" crime was also charged along with the charge that ended in the plaintiff's favor does not create a categorical bar to a claim. *Chiaverini*, 602 U.S. at 562 (2024) ("The question here is whether a Fourth Amendment malicious-prosecution claim may succeed when a baseless charge is accompanied by a valid charge. . . . Consistent with both the Fourth Amendment and traditional common-law practice, courts should evaluate suits like Chiaverini's *charge by charge*." (emphasis added)). A "favorable termination" occurs when a prosecution ends "without a conviction." *Thompson*, 596 U.S. at 49 ("In sum, we hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction.").

Mr. Antonuccio fails to provide sufficient factual allegations in support of his Fourth Amendment claims for malicious prosecution against the Police Officer Defendants. He merely alleges in conclusory fashion that "they charged [him] with a serious crime in order to cover up the abuse and assault," "continued to hide evidence in [his] favor from the court," and that "charges were resolved" on May 16, 2024. Am. Compl. at 5-6, 8. Mr. Antonuccio does not provide any details concerning the nature of the charges against him, the evidence that was allegedly hidden, which, if any, charges were terminated in his favor, or any facts supporting a conclusion that probable cause was lacking when the charges were initiated against him. Mr. Antonuccio has therefore not pled sufficient allegations about the prosecution to support an

inference that it was unconstitutional. *See Santiago v. Humes*, No. 14-7109, 2015 WL 1422627, at *4 (E.D. Pa. Mar. 30, 2015) (dismissing false arrest, false imprisonment, and malicious prosecution claims when plaintiffs failed to "affirmatively assert facts to show that the Officer Defendants did not have probable cause" when plaintiffs simply alleged that all of the allegations against them in the underlying criminal proceedings were false). Without additional details about the prosecution and the Police Officer Defendants' alleged lack of probable cause, Mr. Antonuccio's Fourth Amendment claim for malicious prosecution is undeveloped and must be dismissed.

### 3. Medical Deliberate Indifference

Mr. Antonuccio alleges that he was "medically neglected" when they did "not immediately depart" for the emergency room and, instead, had to wait until an officer was ready to follow behind in a different police vehicle. Am. Compl. at 6, 8. He contends that making him wait even though "security measures were already in place" demonstrated indifference. *Id.* at 8.

A deliberate indifference to serious medical needs claim arising in the context of an arrest or pretrial detainment is governed by Fourteenth Amendment's Due Process Clause. *See Smith v. Gransden*, 553 F. App'x 173, 177 (3d Cir. 2014) ("Deliberate indifference to the medical needs of arrestees violates their Fourteenth Amendment right to due process." (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)); *Natale v. Camden Cnty. Corr. Fac.*, 318 F.3d 575, 582 (3d Cir. 2003) (same in the context of a pretrial detainee); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636-37 (3d Cir. 1995)). The due process rights of a person who has been injured while under arrest are at least as great as the Eighth Amendment protections available to a convicted prisoner. *See City of Revere*, 463 U.S. at 244; *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*) (pretrial detainee's claims of deliberate

indifference to serious medical needs under the Fourteenth Amendment are analyzed under the standard for similar claims under the Eighth Amendment); *see also Peters v. Brown*, 793 F. App'x 118, 123 (3d Cir. 2019) ("We have found it constitutionally sufficient . . . to analyze pretrial detainees' claims of inadequate medical care under the familiar deliberate indifference standard."). To allege a claim for denial of medical treatment under the Fourteenth Amendment, a plaintiff must plead: (1) a serious medical need; (2) behavior on the part of the police officers that constitutes deliberate indifference to that need; and (3) a causal connection between the indifference and the plaintiff's injury. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Natale*, 318 F.3d at 582; *Smith*, 553 F. App'x at 177.

In other words, a plaintiff must allege (1) a subjective element that "the defendants were deliberately indifferent to [his or her] medical needs" and (2) an objective element that "those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002). In addressing the subjective element, the Third Circuit has held that "[d]eliberate indifference is a 'subjective standard of liability consistent with recklessness as that term is defined in criminal law.'" *Smith*, 553 F. App'x at 177 (quoting *Natale*, 318 F.3d at 582). With regard to the objective element, deliberate indifference exists where there is "objective evidence that [a] plaintiff had serious need for medical care" and the need was ignored or delayed for non-medical reasons. *Id.* "[A] police officer [must] . . . provide medical care to an individual who was injured during the course of an arrest when the need 'is so obvious that a reasonably trained officer would recognize the necessity for attention.'" *Klein v. Madison*, 374 F. Supp. 3d 389, 423 (E.D. Pa. 2019) (quoting *Bornstad ex rel. Estate of Bornstad v. Honey Brook Twp.*, No. 03-822, 2005 WL 2212359, at *19 (E.D. Pa. Sept. 9, 2005), *aff'd sub nom.* 211 F. App'x 118 (3d Cir. 2007)). Moreover, a serious medical need exists where "failure

14

to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

The Court understands Mr. Antonuccio to allege a Fourteenth Amendment due process claim based on the alleged delay of medical treatment for the injuries he suffered during the July 21, 2023 incident. Mr. Antonuccio's allegations are conclusory, in that he merely alleges that "they" did not immediately depart for the emergency room, and he was forced to wait until an officer was ready to follow behind in a different police vehicle. Am. Compl. at 8. Mr. Antonuccio does not provide sufficient detail to support plausible deliberate indifference claims. He does not specify the length of the delay or explain how a delay to ensure that security was in place amounted to deliberate indifference. Indeed, his allegations demonstrate that he received continuing medical treatment for his alleged injuries, including the initial treatment received at the emergency room on the date of the incident as well as follow up care with PrimeCare Medical and specialists at St. Luke's Hospital and Doylestown Hospital. *Id.* at 6. Moreover, Mr. Antonuccio has not tied his allegations of delay to any of the named Defendants. *See Rode*, 845 F.2d at 1207. Accordingly, to the extent he seeks to raise a deliberate indifference claim based on a delay of medical treatment, such claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

IV. **CONCLUSION**

As set forth more fully above, the Court is prepared to serve Mr. Antonuccio's excessive force claims against Defendants Smith, Bouldin, and Ruddell in their individual capacity. Any claims asserted against the Upper Moreland Police Department will be dismissed with prejudice because it is not a proper defendant under § 1983. All other claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Considering Mr.

Antonuccio's *pro se* status, he will be granted the option of filing a second amended complaint to attempt to cure the defects identified by the Court.[6] In the alternative, Mr. Antonuccio may advise the Court that he seeks to proceed only on the excessive force claims against Defendants Smith, Bouldin, and Ruddell, which pass statutory screening.

---

[6] If Mr. Antonuccio chooses to file a second amended complaint, the second amended complaint must be a complete document that does not rely on the initial complaint, amended complaint, or other papers filed in this case to state a claim. Although Federal Rule of Civil Procedure 15 contemplates amended pleadings, "an amended pleading supersedes the original pleading and renders the original pleading a nullity." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019). "Thus, the most recently filed amended complaint becomes the operative pleading." *Id.* While the Court must liberally construe *pro se* pleadings, "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings." *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019). This means that the submission of a second amended complaint in this case will "effectively constitute[] an abandonment of any prior complaints filed by [Antonuccio]." *Smith v. Price*, No. 11-1581, 2012 WL 1068159, at *4 (M.D. Pa. Mar. 5, 2012), *report and recommendation adopted*, No. 11-1581, 2012 WL 1072282 (M.D. Pa. Mar. 29, 2012).